### 6184.  PASCHAL *v.* THE STATE.

1. The fact that one is already under contract to perform services for another will not negative the presumption of fraudulent intent on his part in case he obtains advances from a third person upon a promise to perform services for the latter for a period of time wholly or partly concurrent with that embraced in the first contract, and will not afford such an excuse, within the contemplation of section 716 of the Penal Code, as will relieve him from performing the later contract.

2. The provision of section 716 of the Penal Code, as to a return of the money advanced by the hirer, with interest thereon at the time the labor of the employee was to be performed, is sui generis, and is not subject to the general rule which requires that a tender shall be for the exact amount admitted to be due. It was for the jury to say whether an offer (made by a third person on behalf of the accused) to pay instanter whatever amount had been advanced by the employer, if declined, was or was not equivalent to a return of the amount advanced, within the purview of the law.

3. Under the provisions of section 716 of the Penal Code, satisfactory proof of the contract made by the accused, the procuring thereon of money or other thing of value, the failure to perform the services agreed to be performed, or failure to return the money with interest, without good and sufficient cause, resulting in · loss and damage to the hirer, con-

stitute presumptive evidence of the intent to defraud which is essential to a conviction under section 715 of the Penal Code. However, this presumption may be rebutted by any circumstance which leads the jury to entertain a reasonable doubt as to whether a fraudulent intent actually influenced the accused in obtaining the advances; and a charge to the jury which in effect instructed them that this presumption is conclusive was reversible error.

DECIDED MAY 17, 1915.

Indictment for cheating and swindling; from Lincoln superior court—Judge Walker. November 12, 1914.

*Colley & Colley,* for plaintiff in error.

*R. C. Norman, solicitor-general, J. M. Pitner,* contra.

RUSSELL, C. J. The accused was convicted of a violation of section 715 of the Penal Code, commonly known as the "labor-contract law." The accusation contained two counts. The first count alleged fraudulent intent in obtaining $7 at the time the contract was alleged to have been made, and the second alleged fraudulent intent in obtaining $2.50 on the day following that on which the contract was made. It was proved that the first advance was made in Richmond county, and the prosecution was proceeding in Lincoln county, and for that reason, of course, the State insisted upon a conviction under the second count only. Aside from the fact that the prosecutor did not testify that the advance of $2.50 was made upon the faith of the contract, his evidence would have authorized a conviction of the accused. The only witness for the State testified to facts relating to the contract made in Augusta, in Richmond county. The defendant made no statement at the trial, but one Butler, testifying in his behalf, swore that the defendant had worked for him on halves in the year preceding that which was the subject of the contract in question, and that prior to the defendant's meeting with the prosecutor in Augusta, the witness had made a contract with the defendant for the year 1914 (the period embraced in the contract alleged to have been fraudulently entered into), and had advanced to him $4.50 in money on his contract for 1914, as well as allowed him, under the contract, 15 days' work which the defendant was owing the witness. This witness testified, that the defendant lived on his place and asked him to let him off for a week or ten days to go to Augusta. When the defendant got back from Augusta he told the witness of his arrangement with Walton, the prosecutor, and he (the witness) at

once got in his buggy and took the defendant over to Walton's place to explain the matter to Walton. Walton said "he had been to great expense in going to Augusta, board, etc. I asked him if he went to Augusta for the negro. He said 'No,' but he wanted his expenses." The witness further testified that the defendant told him to pay Walton all that the defendant owed Walton, and, in accordance with this request, the witness offered to pay Walton his expenses and all else that the defendant owed him, if Walton would tell him the amount, but Walton refused to "take anything, and also refused to state his bill." Under the testimony in behalf of the defendant, the jury might have acquitted him, although, as already stated, the testimony for the State would have authorized his conviction, and, in this view of the case, it is only necessary to deal with the exceptions to the charge of the court.

1. The court charged the jury to the effect that if they found that at the time of the making of the contract the defendant was under contract with Butler to work for him at the same time, the fact that he was under a contract that might have prevented him from working for Walton would not be such an excuse as is contemplated by the law and as would excuse him from performing his contract with Walton. It was contended that this was error, because, if the accused "was under a valid legal contract with Butler made prior to the Walton contract, he was in law called upon to perform the same, and it would have been wrong and criminal for Walton to have interfered with the same." There is no merit in this exception. The fact that one is already under contract to perform services for another will not negative the presumption of fraudulent intent in case he obtains advances from a third person upon a promise to perform services for the latter for a period of time wholly or partially concurrent with that embraced in the contract previously entered into by him, nor afford such an excuse, within the contemplation of section 716 of the Penal Code, as would relieve him from performing the second contract. So far from excusing one who is already under contract to perform services for another from the imputation of a criminal fraudulent intent, the making of the second contract would tend to strengthen the presumption that he intended to defraud; and the gist of the offense penalized by the labor-contract act is the intent to defraud.

As to the additional exception, that the language used in the

charge referred to was an expression of opinion upon the recited evidence, it is only necessary to say, that while the learned trial judge, in effect, stated that the contract alleged in the indictment was made, the testimony that the defendant had made the contract was uncontradicted; and, no doubt, the existence of the contract with Walton was admitted by counsel for the accused in their argument. The court, of course, can not tell the jury that any fact material to the guilt or innocence of one accused of crime has or has not been proved, unless the fact has been admitted. We are quite sure that no one would be further from attempting to improperly influence the finding of a jury than the learned and able judge who presided at this trial, and if in the pressure of the trial there was a lapsus linguæ in his charge, it is not likely to recur upon a subsequent investigation.

2. We think the learned trial judge erred in instructing the jury as follows: "I charge you also, in this connection, that they would have had to tender whatever was due; that they would not have had to rely upon Mr. Walton as to the amount due, and also the interest at seven per cent. from the time of such advances to the time of the tender, to excuse him under the tender." The evidence on behalf of the defendant, already referred to, showed that the witness went to see Mr. Walton to explain the matter, and, at the defendant's request, offered to pay him any amounts advanced to the accused, as well as the expenses of Walton's trip to Augusta. Naturally the defendant did not know the amount of the expenses attached to Walton's trip, and for that reason the tender of the exact amount of that demand could not be made. There is no evidence that the amount advanced to the accused by Walton was in dispute or that this had previously been the case. If it had been, the offer of the witness in behalf of the defendant would have elicited that fact. The provision of section 716 of the Penal Code as to a return of money advanced by the hirer, with interest thereon at the time the labor of the employee was to be performed, is sui generis, and is not subject to the general rule which requires that a tender be for the exact amount admitted to be due. It was for the jury to say whether an offer (made by a third person on behalf of the accused) to pay instanter whatever amount had been advanced to him by the hirer, if declined by the hirer, was or was not equivalent to a return of the amount advanced, within the purview

of the law. Even in civil cases the law does not require the vain formality of tendering money to one who states that he will not accept it. As to the offer of the witness to pay in behalf of the defendant the money claimed by the prosecutor, which embraced an indefinite amount of personal expenses for a trip to Augusta, it must be said that the greater includes the less, and therefore when the request, made in behalf of the defendant, that the amount of the defendant's indebtedness be stated, accompanied by a present offer to pay the entire bill, was met with a refusal, not only to make a statement but to take anything, it was within the power of· the jury to find that but for the defendant's own act he would not have been subject to that loss which is also essential to a conviction.

3. We think also that the court erred in instructing the jury that if they found, from the evidence, facts, and circumstances of the case, that the accused did not perform the services as he agreed to do in his contract (if they found that there was any such contract), and that Mr. Walton suffered loss and damage by reason of having made any advances to the defendant upon the faith of the contract, they should find the defendant guilty, unless the jury found that he returned the money or other thing of value alleged in the second count of the indictment, or unless he had good and sufficient cause not to perform the contract, in case the jury found that he did not perform it. Section 716 of the Penal Code prescribes that "Satisfactory proof of the contract, the procuring thereon of money or other thing of value, the failure to perform the services so contracted for, or failure to return the money so advanced with interest thereon at the time the labor was to be performed, without good and sufficient cause, and loss and damage to the hirer, shall be deemed presumptive evidence of the intent referred to in the preceding section." The instructions of the learned trial judge left the jury no option as to their verdict, provided proof of the circumstances mentioned in the code section were satisfactory, whereas the law declares these circumstances to be merely presumptive evidence of that intent which is "the paramount, controlling, ever essential element of the offense" which must be proved to have been coexistent either with the contract or the creation of the debt, as the case may be. *Patterson* v. *State,* 1 *Ga. App.* 782 (58 S. E. 284). In contemplation of the statute, the facts enumerated raise the presumption of an intent to defraud. Under

the instructions of the court in the present case, the jury would naturally assume that proof of the facts recited absolutely concluded the question of the defendant's guilt. While the proof of facts recited constitutes presumptive evidence, this presumption may be rebutted by any circumstance presented in the case which might lead the jury to entertain a reasonable doubt as to whether the fraudulent intent actually influenced the accused in obtaining the advances. In other words, the statutory presumption is by no means conclusive, and a charge which in effect instructs the jury that such is the case is reversible error.      *Judgment reversed.*