16359.  CENTRAL OF GEORGIA RAILWAY CO. *v.*
SUMMERS.

1. In this action by a telegraph operator against her employer, a railway company, for damages for an injury received by the plaintiff while she was attempting to deliver a train order to the fireman on a moving engine, which injury was alleged to have been caused by the fireman's negligence in leaning and reaching so far out and down that he struck the plaintiff with his hand in passing, the petition, in view of all the allegations made, was not subject to special demurrer because it failed to allege the precise distance the fireman should have leaned and reached, and how far he did lean and reach.
2. The evidence authorized the verdict found in favor of the plaintiff. The court did not err in overruling defendant's motion for a new trial.

DECIDED SEPTEMBER 9, 1925.  REHEARING DENIED SEPTEMBER 30, 1925.

Damages; from Clayton superior court—Judge Hutcheson. February 18, 1925.

The plaintiff, a telegraph operator, sued the railway company for injuries received by her in the discharge of her duties as an employee while attempting to deliver an order to a through freight-train, and made substantially the following case: The company furnished, for the purpose of delivering such order, a hoop with a handle on it, which device was thirty or forty inches in length. The customary way of using it was for the order, written on a piece of paper, to be attached to the hoop with a clip, and for the operator to stand beside the railroad-track and hold up the hoop at an angle of about forty-five degrees and endeavor to hook it over the arm of an employee on the engine while the latter at the same time was trying to run his arm through the hoop. After such transfer of the hoop the order would be taken off by the trainman and the hoop dropped. There was no prescribed distance that the plaintiff was required to stand from the track in delivering such order. On the night of January 9, 1924, the plaintiff took her stand by the railroad-track as usual, at a point about four feet and ten inches from the nearest rail, for the purpose of delivering the order in question. When she attempted to deliver the order the fireman, or other employee, who was attempting to receive it struck her in the face with his hand and injured her. With reference to negligence the petition as first amended alleged: "The fireman or person on said train, whose name petitioner does not know, but who attempted to run his arm through said hoop and receive said order No. 46, did

not run his arm through said hoop, but, on the contrary, failed to run his arm through the hoop, and reached out farther than was necessary, and reached down farther than was necessary to run his arm through said hoop, and reached around said hoop, and struck petitioner in the face with his hand, injuring petitioner, as set forth in the original petition." "Petitioner does not know the exact number of feet and inches that said employee reached out and down, but she alleges that it was farther than was necessary, because if he had not reached so far out and so far down, he would have run his arm through the hoop, as was his duty to do." "Petitioner shows that the defendant was negligent in that the fireman or other employee of the defendant, who attempted to receive said order No. 46, did not run his hand and arm through the hoop, to which said order was attached, as was his duty to do, he reached down farther than was necessary and reached out farther than was necessary, and reached around said hoop, and struck petitioner in the face, as alleged; all of which actings and doings of said agent and employee of the defendant were negligent."

A second amendment to the petition was made as follows: "Plaintiff further amends . . her original petition, and shows that the person on said train who attempted to receive said order No. 46 by running his hand or arm through the hoop, as alleged in her original petition and amendment thereto, failed to run his hand or arm through said hoop, as was his duty to do, and as she had a right to expect that he would do, but reached around said hoop and on the outside of the same, and struck petitioner in the face with his hand, and injured her, as set forth in her original petition and amendment thereto." "Plaintiff further amends her petition, and shows that defendant was negligent in that its 'agent and employee, whose name plaintiff does not know, did not run his hand or arm through the hoop when he went to receive said order No. 46, as was his duty to do and as she had a right to expect that he would do, but, on the contrary, reached around said hoop and on the outside of the same, and struck her, and injured her as alleged in the original petition and the amendment thereto."

The defendant filed general and special demurrers, both of which the court overruled, and the defendant excepted pendente lite.

The trial resulted in a verdict in favor of the plaintiff. The defendant made a motion for a new trial on the general grounds only, which was refused, and it excepted.

*Mundy & Wright, Cleveland, Goodrich & Cleveland,* for plaintiff in error.

*H. A. Allen,* contra.

BELL, J. (After stating the foregoing facts.)

1. The defendant has not contended in this court that the trial judge erred in overruling the general demurrer, and the only grounds of the special demurrer insisted upon are summed up in the brief of counsel for the plaintiff in error by the following statement: "The plaintiff, when called on by special demurrer, should have stated how far down the fireman leaned out and how far out he leaned, and should have stated how far out and down he should have leaned, and how far out and down it was the rule or custom for him to lean." The petition, fairly construed, shows where the plaintiff was standing and how she was holding the hoop whose dimensions were given, and avers that it was necessary for the person receiving the order to lean and reach only far enough to run his arm through the hoop, and that this was customary and usual. This, under the peculiar facts, was a sufficient allegation of how far the fireman ought to have leaned and reached, it not appearing that the plaintiff should have known the exact distance. Likewise, she could hardly have been expected, under the circumstances, to know how much farther he did lean and reach, and she alleged that she did not know. There was no error in overruling the special demurrer. Each of the cases cited by counsel for the plaintiff in error in support of the same is materially different in its facts from the case under consideration.

2. The petition alleged that the plaintiff was standing *about* four feet and ten inches from the nearest rail of the track. Since a pleading is to be construed most strongly against the pleader, this allegation must be construed as alleging a distance of not exceeding four feet and ten inches. The plaintiff is bound by the averments of her declaration, and, although she testified that she stood a greater distance, she could have no advantage by this evidence beyond what she alleged. Her allegations were conclusive evidence against her. *Peacock* v. *Terry,* 9 *Ga.* 137 (6), 150; *Hampton* v. *Thomas,* 11 *Ga.* 317, 320; *East Tennessee &c. Ry.*

*Co.* v. *Kane,* 92 *Ga.* 187 (5) (18 S. E. 18, 22 L. R. A. 315);
*Kelly* v. *Strouse,* 116 *Ga.* 872 (5) (43 S. E. 280); *New Zealand
Fire Ins. Co.* v. *Brewer,* 29 *Ga. App.* 773 (6) (116 S. E. 922).
It is contended by the plaintiff in error that since the petition estab-
lished conclusively that the plaintiff was standing at a distance
of not exceeding four feet and ten inches, or fifty-eight inches,
from the nearest rail, and that since the evidence showed that
the engine extended thirty-two inches beyond the rail, and that a
person on the engine, while endeavoring to receive a train order,
as was done in the instant case, would be required, in the usual
and necessary way, to hold to a certain rod or grab-iron, and then
to extend or lean his entire body beyond the spread of the engine
a further distance of twenty-five inches, it appeared without ques-
tion that the body of the fireman or the person attempting to
receive the order would be obliged to pass within at least one inch
of the plaintiff's face, if not to strike it, and that the evidence
thus established as a matter of law that the plaintiff voluntarily
placed herself in a position of danger. Whether we should agree
with this conclusion if the evidence established without dispute
that the facts were as stated, we differ with counsel as to the effect
of the evidence. In the first place, only two witnesses testified as
to the extent of the engine's spread beyond the rails. Neither of
these witnesses appeared to have examined the particular engine,
but each testified from his general knowledge with respect to the
width of engines. One or more witnesses testified as to the position
an employee on the engine should take in receiving an order, and
the testimony of the witness who was most certain upon this point
was that "a fireman would ordinarily lean out of the engine twenty
or twenty-five inches in taking an order; twenty-five inches would
be a reasonable amount." The testimony of the plaintiff, however,
was different, and was sufficient to make an issue at least as
to whether it was necessary for the body of the fireman to ex-
tend beyond the width of the engine for any distance. She testi-
fied: "He is not supposed to project his body out." It appears
that the plaintiff was a person of experience in delivering train
orders and in observing positions taken by other employees in re-
ceiving them. Her testimony might not have been as worthy of
belief as that of the other witnesses, but this court can not pass
upon the credibility of witnesses, except in extraordinary cases

where, for some exceptional reason, it appears as a matter of law that the witness should not be believed; as, for instance, where testimony is to the existence of facts that are impossible or inherently improbable. *Patton* v. *State*, 117 *Ga.* 230 (43 S. E. 533). The plaintiff further testified that she had stood in that same place and in the same position in delivering orders daily for several years, and had been safe in so doing; that the fireman was not in his usual position on the occasion in question, but his whole body was out of the engine. We find also the following in her testimony: "If he had had his body far enough back in the engine he could have run his arm through the hoop and yet it would have been impossible for him to have struck me. It would have been impossible for him to have reached beyond the hoop and struck me in the face if he had been in the right position." Moreover, the engineer testified: "They never hang on the grab-irons with their hands and swing their bodies out; they put their arm through the grab-iron and reach their [other] arm out with the elbow bent to catch the order."

It was inferable, under the evidence, that the hoop is thus caught up, not in the employee's hand, but in the arm as the train continues onward. Even assuming that the evidence indisputably established that the spread of the engine was thirty-two inches beyond the rail, this still would have left approximately twenty-six inches between the engine and the plaintiff's face; and, as we have seen, the jury could have found that it was proper for the fireman to extend only his arm, and not his body, into this space. In these circumstances, it can not be held as a matter of law that the plaintiff, as an operator experienced in such matters, assumed a position of evident danger in standing a distance of only twenty-six inches from the train. But it can hardly be said to have been established absolutely that the engine extended for thirty-two inches beyond the rails. As we have already indicated, the two witnesses who testified to this fact were apparently testifying only as to engines in general; and, besides, each of them was contradicted by the plaintiff (if not also by the engineer) on the material matter as to what would have been the customary position for the fireman to take in receiving the order. The contradiction of their testimony on this question would have been sufficient to make their credibility on the other matters a ques-

tion for the jury.   Under the evidence as a whole, we can not
say that the verdict was unauthorized.

*Judgment affirmed.   Jenkins, P. J., and Stephens, J., concur.*