22839.  POOLE *v.* THE STATE.

Decided August 3, 1933.

*Branch & Howard, W. Paul Carpenter, Noah J. Stone, J. P. Knight, C. E. Parrish, Wilcox, Connell & Wilcox,* for plaintiff in error.

*H. C. Morgan, solicitor-general, E. D. Rivers, H. W. Nelson, C. E. Jackson, J. P. Tomlinson,* contra.

MacIntyre, J.  A. D. Poole was indicted for the offense of murder, it being alleged in the indictment that he did on a day named unlawfully and with malice aforethought kill one Winona Patterson by driving an automobile against and over her. He was tried under this indictment and convicted of the offense of involuntary manslaughter in the commission of an unlawful act. Thereupon the defendant made a motion for a new trial, the same was overruled, and he excepted.

Ground 4 of the motion for a new trial complains of the admission of the following testimony:  Q.  "Did Mr. Poole and Mr. Gaines during any time you were there concern themselves with the parties injured in the Chevrolet car?"  A.  "No, sir."  Q.

"Did they go about where they were?" A. "No, sir; I didn't see them." One of the unlawful acts charged was driving the automobile while under the influence of intoxicating liquors. The State introduced considerable evidence as to the defendant's condition with reference to his intoxication. Some of this evidence was to the effect that immediately after the wreck he was slumped over the steering-wheel of the automobile. The testimony objected to tended to prove a circumstance which, along with other circumstances, tended to illustrate the question whether or not the defendant was intoxicated. We hold that the testimony was admissible.

Grounds 5 and 6 complain that the court erred in refusing to grant motions for a mistrial, "for that the absence of the trial judge from the county of Cook after the trial began and before the verdict of the jury was rendered, vitiated the entire proceedings, and the verdict thereafter returned was a nullity." We quote the following from ground 5: "Movant recites and alleges as a fact that the trial began on Tuesday, February 9th, 1932, and lasted until Monday, February 15th, 1932. Late in the afternoon of Tuesday, February 9th, 1932, and after adjournment until the next morning, Honorable W. R. Smith, the presiding judge, absented himself from Cook county and spent the night at his home in Nashville, Berrien county. Late in the afternoon of Wednesday, February 10th, and after the court had been adjourned for the night, he again absented himself from Cook county and spent the night at his home in Nashville, Berrien county, but at no time was he outside of the county of Cook while the trial was actually in progress. When court convened on Thursday, February 11th, 1932, counsel for the defendant moved the court to declare a mistrial on that ground. There was no agreement between counsel for the defendant, or either of them, or the defendant himself, and the court, or counsel representing the State and counsel representing the defendant, or either of them, for the trial judge to leave the county of Cook at any time after the defendant was placed on trial. After the motion for a mistrial was submitted, and before the court ruled on the same, the trial judge directed the court reporter to let it appear in the record that J. P. Knight, one of counsel for the defendant, had seen the trial judge in Berrien county every morning before the court convened." (J. P. Knight, sworn as a witness,

testified that he did not see the court, as stated in the ground.) Ground 6 recites that after the judge had charged the jury, and after they had deliberated for several hours, the judge instructed them not to consider the case further until the following Monday morning, and recessed the court until that time, and that immediately upon the reconvening of court the defendant again moved for a mistrial. Counsel for both the State and the accused cite and discuss *Horne* v. *Rogers,* 110 *Ga.* 362 (35 S. E. 715, 49 L. R. A. 176). We do not think that case is in point, since it appears from it that the judge, during the actual progress of the trial and during the argument of counsel to the jury, absented himself from the court room. Counsel also cite and discuss *Martin* v. *State,* 10 *Ga. App.* 455 (73 S. E. 686), wherein it was held that if "the presiding judge in a criminal trial leaves the county of the trial *while the jury is deliberating upon its verdict,* and goes to an adjoining county, the pending trial is vitiated, and a verdict thereafter returned by the jury is a nullity." (Italics ours.) In the latter case, it will be noted that the trial judge left the county of the trial while the case was in progress and the jury was deliberating upon the case, there having been no adjournment, temporary or otherwise. In the instant case, on each of the occasions complained of, the judge had adjourned the court temporarily to a fixed time. The court was not in operation during the judge's absence, and the trial was not in progress. It was time out. The court was not pretending or undertaking to transact any business with reference to the trial. The time of the temporary adjournment was tempus non—no time—so far as the progress of the trial was concerned, just as certain days are dies non. Under the facts of this case, we can not see that the absence of the trial judge resulted in any harm to the accused. We do not think it was reversible error.

It appears from ground 7 that the court inadvertently charged the jury what it was necessary for the State to show in order to render a dying declaration admissible, and then, in effect, charged them that they must be satisfied beyond a reasonable doubt that the deceased was at the time in the article of death and conscious of his condition, when, as a matter of fact, the alleged dying declaration was introduced by the defendant; and the defendant is not required to prove beyond a reasonable doubt that the deceased was

in the article of death and conscious of his condition. The defendant does not have to establish an affirmative defense beyond a reasonable doubt, it being only necessary that he make it out to the reasonable satisfaction of the jury. *Nixon* v. *State,* 14 *Ga. App.* 261 (2) (80 S. E. ·515). While it is hardly probable that this error will occur upon another trial of the case, it may not be amiss to direct attention to it.

Ground 8 complains that the following excerpt from the charge was error because it was not supported by the evidence: "Statements of the deceased in conflict with proven dying declarations, if any have been made, are also admissible; and, after all, those statements which the defendant contends are in conflict with dying declarations are to be considered by the jury and given such weight as you think proper." The statements of the deceased, namely: "Miss Henderson, it will kill me if they expel me from college. I will never get over it. I am to graduate in June," were in conflict with the contentions of the defendant that the declarations were dying declarations and that the deceased was conscious of her condition. We hold that the charge was warranted by the evidence.

In ground 9 movant contends that the court erred in charging the jury as follows: "I charge you further upon this subject that no person shall operate a motor-vehicle upon any public street or highway at a speed greater than is reasonable and safe, having due regard for the width, grade, character, traffic and common use of the street or highway, or so as to endanger life or limb or property in any respect whatsoever; but said speed shall not exceed forty miles per hour." The criticism is that it embodied substantially the provisions of § 11 of the motor-vehicle act approved August 23, 1927 (Ga. L. 1927, p. 226), which are so indefinite as to render that section of the act void and incapable of enforcement, and that said charge was calculated to confuse the jury and tend to prevent a clear understanding of what particular act would or would not be unlawful. The charge complained of is almost a verbatim copy of said section of said act, which (with the exception of the tabulation at the end thereof) reads as follows: "No persons shall operate a motor-vehicle upon any public street or highway at a speed greater than is reasonable and safe, having due regard for the width, grade, character, traffic, and common use of street or highway, or

so as to endanger life or limb or property in any respect whatsoever; but said speed shall not exceed those tabulated below," etc. The only speed involved in this case being that of forty miles an hour, the tabulation is not quoted. Section 10 of the act of November 30, 1915 (Acts Ex. Sess. 1915, p. 107), is as follows: "No person shall operate a motor-vehicle or motorcycle upon any public street or highway at a speed greater than is reasonable and safe, not to exceed a speed of 30 miles per hour, having due regard for the width, grade, character, traffic and common use of such street or highway; or so as to endanger life, limb or property in any respect whatever." In considering the act of 1915 in a case similar to the one at bar, the Supreme Court, in *Howard* v. *State*, 151 *Ga.* 845 (108 S. E. 513), held that that part of said act providing that a motor-vehicle shall not be operated upon any public street or highway "at a speed greater than is reasonable and safe" was so indefinite as to render that part of the statute void; and that the instruction of the court embodying that part of the statue was not only error, but harmful error, "as one of the material issues under the evidence in the trial of this defendant was whether he was doing an unlawful act at the time the automobile driven by him struck and killed the decedent;" and that said charge was calculated to confuse the jury and to prevent a clear understanding of what particular act would not be unlawful. The Supreme Court further stated in the *Howard* case that it was not holding that the inhibition in the statute against exceeding the speed of thirty miles per hour was void for indefiniteness, but that what they said above related to the other language of the statute embodied in the charge. The statute of 1927, now under consideration, is substantially the same as the statute of 1915, the material difference being that the act of 1915 provides that the speed shall not exceed thirty miles per hour, while the act of 1927, as applied to the instant case, provides that the speed shall not exceed forty miles per hour. If it was reversible error to charge that a motor-vehicle shall not be operated upon a public street or highway at a speed greater than is reasonable and safe under the act of 1915, it is reversible error to charge the same language under the act of 1927. It will be observed that the Court of Appeals in the *Howard* case refused a new trial on a ground similar to the ground herein considered, and that this court was reversed by the Supreme Court. See 25 *Ga.*

*App.* 408 (103 S. E. 683). In obedience to the law as laid down in the *Howard* case, we are constrained to reverse the judgment in this case.

Grounds 10 and 11 do not disclose reversible error, and the general grounds will not be considered.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*

GUERRY, J., concurring specially. I can not agree with the opinion stated in the third headnote of this case, although I agree with the reversal. It seems to me, inasmuch as the indictment charges criminal negligence in the operation of an automobile at a rate of speed in excess of forty miles an hour, that the alleged error in charging the preceding part was immaterial and it was not involved. Unless the rate of speed was in excess of forty miles, under this charge the defendant was without blame. I want to make some observations with reference to this language as used in the act of 1927. It is practically the same language embodied in the acts of 1910, 1915, and 1921, all of which acts have been declared inoperative as being too vague, uncertain, and indefinite to support a criminal charge. I am not unmindful of the fact that this court and the Supreme Court have so held several times. The *Hayes* case in 11 *Ga. App.* 371 (75 S. E. 523), is the first opinion passing on this question, and it has been followed since that time. This matter has been discussed by the writer in the case of *Ray* v. *State,* 47 *Ga. App.* 22 (169 S. E. 538). The language of the act is that adopted by many other States in making traffic laws and regulations. Indeed, what is "reasonable and safe having due regard to the character of the traffic, width of road," etc., is not a constant but a variable quantity, and ought to depend on the circumstances of the case. The jury should be the alchemist to determine this question, as it does the matter of negligence, reasonable fear, public indecency, and matters of similar kind and nature. Oftentimes a speed of fifty miles an hour is more reasonable and proper than a speed of twenty-five miles per hour. I recognize that our courts have put a different construction thereon, but I am convinced that the enlightened conscience of fair and impartial jurors is a better yardstick to measure and judge the circumstances of each particular act than a hard and fast rule as to the speed per hour. Under some circumstances ten miles per hour may be gross or criminal negligence, and sixty not necessarily such negligence.

Our legislature has not been able to find better language than that used and adopted in other States in passing traffic laws. It seems to me courts of review should be willing to put into effect the clear and oft expressed wish of our lawmaking body.